**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RONALD P. WURST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 10 C 4142** |
| **v.** | ) | |
| | ) | **Magistrate Judge Morton Denlow** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Ronald P. Wurst ("Claimant") brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB"). Claimant raises the following issues in support of his motion: (1) whether the ALJ's determination at step two was erroneous; (2) whether the ALJ's determination at step three was erroneous; (3) whether the ALJ's RFC determination at step four was erroneous; (4) whether the ALJ's credibility determination was patently wrong; and (5) whether the ALJ's step five determination was erroneous. For the following reasons, the Court denies Claimant's motion to reverse the final decision of the Commissioner of Social Security and grants the Commissioner's motion to affirm the Commissioner's decision.

# I.  BACKGROUND FACTS

## A.    Procedural History

Claimant filed for SSI and DIB on April 17, 2008, alleging disability onset dates of April 15, 2006 and May 10, 2006, respectively.  R. 98-101, 102-10.  Claimant later amended his alleged onset date to July 18, 2007, his 50th birthday.  R. 212.  The Social Security Administration ("SSA") denied the DIB application on June 12, 2008.[1]  R. 49.  Claimant then filed a request for reconsideration which was denied on September 9, 2008.  R. 50, 52-55.  Thereafter, Claimant requested a hearing before an ALJ.  R. 60.

On November 19, 2009, Administrative Law Judge Janice M. Bruning ("ALJ") presided over a hearing at which Claimant appeared with his attorney Stephen Tousey.  R. 28-46.  Claimant and Edward F. Pagella, a vocational expert ("VE"), testified.  On January 13, 2010, the ALJ rendered a decision finding Claimant not disabled through his date last insured.  R. 11-21.

Claimant sought review of the ALJ's decision to the Appeals Council.  R. 4-6.  On May 28, 2010, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.[2]  R. 1-3.  Claimant subsequently filed this action for review

---

[1]The record is unclear regarding the outcome of the SSI application, as the ALJ's decision only addresses Claimant's disability through the date last insured and there is no record of an appeal from the SSI application.

[2]The Appeals Council identified the date last insured as March 31, 2008 while the ALJ identified December 31, 2007 in her opinion.  R. 1, 14.  Both dates have some support in the record.  *See* R. 121 (3/31/2008); R. 138 (12/31/2007).  Because neither party raised this as an issue, the Court will accept December 31, 2007, the date identified by the ALJ, as Claimant's date last insured.

pursuant to 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of this Court

pursuant to 28 U.S.C. § 636(c). Dkt. 16. The Court held an oral argument on May 23, 2012.

**B.     Hearing Testimony - November 19, 2009**

**1.     Ronald Wurst - Claimant**

At the time of the hearing, Claimant was fifty-two years old. R. 98. He completed

school through the twelfth grade. R. 147. At the time of the hearing, Claimant was receiving

unemployment benefits and looking for a light duty job. R. 30-31. Claimant testified that

he has a plastic canal in his right ear and is 90% deaf in his left ear. R. 31. He takes

medication for his foot pain, but not his knee and testified that he has recovered 90% from

his knee replacement surgery. R. 32. He takes oral medication for his diabetes. *Id.*

Claimant's ability to walk depends on the time of day and weather. On a damp day

he can walk two blocks before needing to rest, while he can walk three to four blocks on a

sunny day. R. 32-33. He testified that on a good day he can stand for one to three hours and

can sit for three or four hours at a time. R.33. On a bad day he can stand for thirty to forty-

five minutes before needing to rest his feet. R. 40. In total, out of an eight hour work day,

he can stand for two to three hours on a bad day. R. 41. On a good day, that increases by

an hour. *Id.* In an average week, five days are bad and two days are good. *Id.*

Claimant has difficulty with stairs and sleeps on a couch a floor below his bedroom

to minimize the number of stairs he must climb. R. 33. Claimant also has difficulty bending,

stooping, crouching, crawling and kneeling. R. 34. Claimant estimated that he can lift fifty

pounds. R. 33. His balance is sometimes off, depending on his medications. R. 34.

Claimant does not regularly use an assistive device but will use one if available. As an example, he explained that he uses a shopping cart to assist with walking at a store. *Id.*

Regarding daily activities, Claimant drives everyday, can prepare simple meals (using the microwave, for example), takes out the garbage, and can do dishes and laundry. R. 35-36. His ability to make the bed depends on stiffness; he can do very little vacuuming because he can't carry it up and down stairs, and he can use a leaf blower in the yard but not do other yard work. R. 36.

Claimant testified that his family goes to drag races approximately two times per month and he participates as a crew chief. R. 36-37. Claimant sits in a chair or golf cart and does not personally do any car maintenance. R. 37. He also attends swap meets and uses a mobility cart to get around the swap meets. *Id.* Claimant once rode a motorcycle but quit around November 2007, one month before his date last insured. *Id.* Claimant socializes with family and friends at home, watches television, and reads magazines. R. 38. He also feeds and grooms his dog. *Id.*

### 2. Edward F. Pagella - Vocational Expert

Edward Pagella testified as a vocational expert. The VE described Claimant's past work, classifying his job as a mechanic as skilled, medium work. The VE testified that Claimant's mechanical skills from that job are transferable to light level work as an oil change mechanic. R. 43. The specific mechanical skills are: knowledge and utilization of a variety of different types of hand tools; precision; and tuning of an automobile. *Id.*

The ALJ described a hypothetical person of Claimant's age, education and work

4

experience who can: lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of six hours in an eight hour work day; cannot ever climb ladders, ropes, or scaffolding; can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; and can push and pull occasionally with the left lower extremity. *Id*. The VE testified that this person could perform the oil change job, of which there are 9200 positions in Claimant's region. R. 43-44. The ALJ then added a sit/stand at will option that would allow the hypothetical person to change positions after one hour. R. 44. With this option, the VE testified that Claimant would not be able to use his transferable skills, but could perform unskilled occupations such as hand assembler, of which there are 5600 positions; hand packer, of which there are 4200 positions; and hand sorter, of which there are 1800 positions. *Id*.

## C.     Medical Evidence

### 1.     Dr. Shawn W. Palmer, D.O., Orthopedic & Spine Associates

Claimant presented at Orthopedic & Spine Surgery Associates on June 8, 2006 due to a knee injury at work sustained while he was getting up off the ground. R. 386. Previous medical history at that point included hypertension and Type II diabetes. *Id*. On June 22, 2006, Dr. Shawn Palmer, D.O. ("Dr. Palmer), diagnosed a torn meniscus and a secondary Baker's cyst. R. 385, 445. The doctor recommended an arthroscopy for debridement of Claimant's medial meniscus. *Id*.

Claimant was admitted to Provena St. Joseph Hospital on July 10, 2006, for treatment of the torn meniscus in his left knee. R. 323, 333-34. On that date Dr. Palmer performed an

arthroscopy, partial medial meniscectomy, chondroplasty of the medial femoral condyle, and partial synovectomy. R. 333. Claimant was discharged the same day. R. 335.

On July 13, 2006, Claimant followed up with Dr. Palmer. R. 385. Dr. Palmer indicated that the arthroscopy showed a large tear, Claimant was to start physical therapy, and Claimant could only perform sedentary work. R. 385. On July 27, 2006, mild improvements were noted and Dr. Palmer prescribed medications to decrease swelling and continued physical therapy. Claimant was "certainly not ready to return to his vigorous line of work." R. 384. On August 24, 2006, Claimant continued to have persistent pain. *Id.* The doctor determined that Synvisc treatment (one shot per week for three weeks) would be an appropriate next step. *Id.* At that point, Dr. Palmer opined that Claimant would only be able to engage in sedentary work and if the Synvisc treatment was not successful, Claimant would face a reconstructive procedure. *Id.* The Synvisc procedure (actually Hyalgan, but this appears to be simply a different trade name for the same generic drug) was completed on September 15, 2006. R. 382. On October 5, 2006, Dr. Palmer noted the procedure gave Claimant almost no relief and it was the doctor's opinion that Claimant was headed towards a partial knee replacement. R. 382. On November 2, 2006, Dr. Palmer recommended a partial knee replacement. R. 381. At that time, it was Dr. Palmer's opinion that Claimant could not perform more than sedentary work. *Id.*

### 2. Royal Physical Therapy - 2006

Records from Royal Physical Therapy show Claimant began treatment there on July 18, 2006 and terminated treatment on August 24, 2006. R. 424-33. Initially Claimant

reported improvement, but then indicated increased pain, though that may be attributable to discontinuing his medications.  R. 425-29.

### 3.      Provena St. Joseph Hospital

On February 5, 2007, Claimant was admitted to Provena St. Joseph Hospital for a partial knee replacement by Dr. Palmer.  R. 232.  No complications were reported.  R. 233. In a consultation with Dr. Lynn D. Mershon ("Dr. Mershon") the day after surgery, Claimant reported "I am in so much pain you won't believe it."  R. 228.  Dr. Mershon recommended that Claimant continue to receive bedside physical and occupational therapy and noted pain control was the barrier to discharge home.  R. 230.  Claimant was discharged to home care on February 9, 2007.  R. 221.

### 4.      Royal Physical Therapy - 2007

On February 20, 2007, Claimant began physical therapy.  R. 416.  He reported a three or four on a scale of ten for constant pain in his left knee and stated that swelling was greatly limiting his mobility and exercise.  *Id.*  Over the course of physical therapy, Claimant reported improvement in his left knee, but he had difficulty sleeping because finding a comfortable position was challenging and stairs continued to be a difficulty.  R. 412.  By April 3, 2007, Claimant reported that he could go up and down stairs better, and had pain only occasionally with movement.  R. 404.  A discharge summary from physical therapy on April 11, 2007 noted that Dr. Palmer had released Claimant and returned him to work full duty without restrictions.  R. 403.

### 5.      Winters Family Practice.

### a. Dr. David B. Cespedes, D.O.

Dr. David B. Cespedes, D.O. ("Dr. Cespedes") first saw Claimant on November 2, 2005, for chest pain, frequent urination, and chronic foot pain. R. 449. Later that same month, Claimant expressed concern that his foot pain, described as "burning and numbness," prevented him from working and that he was experiencing significant stress because he recently lost his business. *Id.* Dr. Cespedes referred him to diabetes management class. *Id.* On June 5, 2006, Dr. Cespedes referred Claimant to orthopedics due to the work injury. R. 450. The remainder of Dr. Cespedes's notes detail medication refills and a number of phone calls, though Claimant was not seen after January 31, 2007 when he was cleared for surgery. R. 451-52.

### b. Dr. Lucie Bianchi, M.D.

Dr. Lucie Bianchi ("Dr. Bianchi") also completed a Medical Evaluation - Physician's Report after examining Claimant on February 19, 2009. R. 529. Claimant was first seen on November 2, 2005 and then seen two times per year through February 19, 2009. R. 529. She noted Claimant has poor control of diabetes. R. 531. She evaluated a 50% reduced capacity in Claimant's ability to walk and stand, and 20% to 50% in his ability to travel on public transportation. R. 532.

### 6. Dr. John J. Mytych, D.P.M. - Elgin Foot and Ankle Center

Dr. John J. Mytych ("Dr. Mytych"), a podiatrist, saw Claimant on November 21, 2005 and on December 1, 2008. R. 519. In 2005, Dr. Mytych diagnosed diabetic peripheral neuropathy and severe osteoarthritis in the rear right foot and a likely similar condition in the

left.  R. 467.  Claimant reported to Dr. Mytych that he had numbness in his feet and was recently diagnosed with diabetes.  R. 468.  Claimant also reported pain in both feet to the point that he could not walk or stand for more than one to two hours at a time and he had to discontinue his work as an auto mechanic.  *Id.*  He recalled a surgery on his foot thirty-two years ago but did not know the nature of that procedure.  *Id.*

Three years later, on December 1, 2008, Dr. Mytych completed a Medical Evaluation - Physician's Report after examining Claimant.  R. 519-22.  Dr. Mytych diagnosed Claimant with severe osteoarthritis in the right foot at the midtarsal joint.  R. 519.  Dr. Mytych found that Claimant had more than 50% reduced capacity in walking, bending, standing, stooping, siting, turning, climbing, pushing, and pulling and that Claimant could not lift more than twenty pounds at a time with frequent lifting of ten pounds.  R. 522.  On December 1, 2008, Claimant reported he has pain after fifteen to thirty minutes of standing.  R. 523. Dr. Mytych recommeded an ankle foot orthotic.  R. 524.  On that date, a year after the date last insured, Dr. Mytych noted that Claimant "seems to be doing better with his Cymbalta for his neuropathy symptoms...He may very well evolve to being on disability due to the fact that he is a mechanic and the severe Osteoarthritis may not respond to an AFO but I think it is definitely worth trying."  R. 533.

### 7. Dr. Ernest Bone, M.D. - State Agency Reviewing Physician

Dr. Ernst Bone, MD ("Dr. Bone") completed an RFC assessment on May 16, 2008. R. 510.  Dr. Bone reviewed the treatment notes from Dr. Cespedes, Elgin Foot and Ankle, Orthopedic and Spine Surgery (which includes the physical therapy records), and Provena

St. Joseph. R. 510. Dr. Bone concluded that Claimant could lift twenty pounds occasionally, ten pounds frequently, could stand and/or walk six hours in an eight hour workday, sit for six hours in an eight hour workday, is limited in pushing or pulling in lower extremities, and can only occasionally climb a ramp, stairs, kneel, or crawl. R. 504-05.

## D.    The ALJ's Decision

Following a hearing and review of the medical evidence, the ALJ rendered a decision unfavorable to Claimant. R. 11-21. The ALJ found Claimant was not disabled between July 18, 2007, the alleged onset date, and December 31, 2007, the date last insured and upheld the denial of DIB.

The ALJ evaluated Claimant's application under the requisite five-step analysis. R. 15-21. At step one, the ALJ found that Claimant did not engage in substantial gainful activity during the period from his alleged onset date of July 18, 2007, through his date last insured, December 31, 2007. R. 16. At step two, the ALJ determined that Claimant has the severe impairments of arthritis in the left knee with a history of surgery for torn meniscus and obesity. R. 16-17. At step three, the ALJ found that through the date last insured, Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 17. The ALJ then considered Claimant's residual functional capacity ("RFC") and found that through the date last insured, Claimant had the RFC to perform light work with no climbing of ladders, ropes, or scaffolds and only occasional climbing of ramps, stairs, balancing, stopping, kneeling, crouching, crawling, and pushing/pulling with the lower left extremity. R. 17.

10

In assessing Claimant's credibility, the ALJ found that his medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statement concerning the intensity, persistence and limiting effects of these symptoms were not credible; the ALJ found Claimant to be not persuasive. R.18-19.

The ALJ gave greater weight to Dr. Bone's RFC because it was consistent with and supported by objective medical evidence of record. The ALJ gave Claimant's podiatrist (Dr. Mytych) and primary care physician (Dr. Bianchi) less weight because their opinions were not consistent with their treatment notes or supported by objective medical evidence of record. R. 19.

At step four, the ALJ found that through the date last insured, Claimant was unable to perform any past relevant work. R. 19. The ALJ also found that Claimant had acquired work skills from past relevant work. The ALJ concluded that there were other occupations with jobs existing in significant numbers in the economy which Claimant could perform. R. 20. Thus, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act through December 31, 1007, the date last insured.

## II. LEGAL STANDARDS

### A.    Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000).

Under such circumstances, the district court reviews the decision of the ALJ. *Id*. The reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). A "mere scintilla" of evidence is not enough. *Id*.; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when the record contains adequate evidence to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or an adequate discussion of the issues, it must be remanded. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the findings. *Id*.

**B.     Disability Standard**

Disability insurance benefits are available to a claimant who can establish he is under

12

a "disability" as defined by the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to perform his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). An ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id*. Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ must determine whether other jobs exist in the economy that the claimant can perform. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

## III. DISCUSSION

Claimant raises five issues in support of his motion: (1) whether the ALJ's determination at step two was erroneous; (2) whether the ALJ's determination at step three

was erroneous; (3) whether the ALJ's RFC determination at step four was erroneous; (4) whether the ALJ's credibility determination was patently wrong; and (5) whether the ALJ's step five determination was erroneous. The Court addresses each in turn.

**A. At Step Two, the ALJ Was Not Required to Further Evaluate Whether Claimant's Impairments, in Combination, Amount to a Severe Impairment.**

At step two the ALJ must determine whether a claimant has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 1520(a)(4)(ii). The ALJ concluded that Claimant has the severe impairments of arthritis in the left knee with history of surgery for torn meniscus and obesity, but his hypertension, diabetes, and hearing loss individually are not severe impairments. R. 16-17. Claimant argues that 20 C.F.R. §404.1523 requires the ALJ to consider the combined effect of all impairments, even those that are not severe, and determine whether those impairments, in combination, amount to a severe impairment. Claimant contends that the ALJ erred by failing to assess the combined severity of his severe and non-severe impairments at step 2, prejudicing the outcome of the case.

The Seventh Circuit recently explained "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process" and referred to step two as a "threshold requirement." *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010); *see also Eskew v. Astrue*, No. 10-3951, 2011 U.S. App. LEXIS 24035, at *5-6 (7th Cir. 2011) (finding no error where the ALJ did not consider non-

14

severe impairments in combination after finding the claimant had severe impairments and reiterating that step two is a threshold); *Willis v. Astrue*, No. 10-207-CJP, 2011 U.S. Dist. LEXIS 71313, at * 24 (S.D. Ill. July 1, 2011) ("Further, the determination of whether a particular impairment is severe or not is of no consequence to the outcome of the case where, as here, the ALJ recognized other severe impairments and so proceeded with the full evaluation process.").

Unlike in *Drake v. Astrue*, the ALJ explained why Claimant's other impairments are not severe. *Drake v. Astrue*, No. 09 C 6954, 2010 WL 5463252, at * 6 (N.D. Ill. Dec. 27, 2010) ("The ALJ therefore must have found—without so stating—that they were not severe impairments. But, the ALJ offered no explanation for why this is so."). Rather, the case at bar is virtually indistinguishable from *Castile* and *Eskew* and dictates a similar conclusion: the ALJ did not err when she determined which of Claimant's impairments were severe and continued on in the evaluative process based on finding at least one severe impairment. Moreover, Claimant never explains how or why "the failure to assess the combined effects of all of Wurst's impairments significantly distorts the analysis that should have been undertaken at Step Three." Pl.'s Br. 8; *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.")

Claimant raises several alleged factual errors made by the ALJ at this juncture and claims that errors at this stage prejudiced the remaining analysis. The Court does not agree that the ALJ made the factual errors identified by Claimant. Claimant argues that the ALJ

15

thought Dr. Mytych's examination occurred only after the date last insured. However, the ALJ references the 2005 examination in her opinion. R. 18. The Court also does not agree that the ALJ's description of Claimant's knee condition as a "torn meniscus" rather than a "partial knee arthroplasty" was a mistake of fact that may have changed the outcome. The medical records are clear that Claimant's knee injury arose from a torn meniscus and subsequent treatment attempts. An arthroplasty is a procedure rather than a condition. The ALJ's reference to "arthritis in the left knee with history of surgery for torn meniscus" was accurate. R. 16. The ALJ's analysis at step two was not erroneous.

**B.     The ALJ Did Not Err in Determining that Claimant's Impairments or Combination of Impairments Do Not Meet Or Medically Equal a Listed Impairment.**

At step three, the ALJ must determine whether a claimant's impairments or combination of impairments meets or medically equals a listed impairment. 20 C.F.R. § 404.1520 (a)(4)(iii). If the answer is in the affirmative, a claimant is disabled. *Id.* If the impairments do not meet or medically equal a listing, the analysis continues. Claimant carries the burden of showing that his impairments met a listing, and he must show that his impairments satisfy the various criteria. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Claimant argues the ALJ erred at step three by not considering all of Claimant's impairments in combination.

The ALJ concluded that Claimant does not have an impairment or combination of impairments that meet or medically equal a listing. The ALJ's analysis at this stage stated: "The claimant's impairments, alone or combined do not meet or medically equal the criteria

16

of 1.02 or 1.03 of the Listing of Impairments as he is able to ambulate effectively without the use of an assistive device." R. 17; *see* 20 C.F.R. Part 404, Subpart P, App. 1, Listing 102, *Major dysfunction of a joint(s) (due to any cause)* and Listing 1.03, *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint.*

It is not clear to this Court, other than being brief, what error Claimant believes the ALJ made at this juncture. Claimant argues the record shows evidence of impairments that, when combined with Claimant's severe impairment of obesity, could equal a listing but does not direct the Court to any particular listing. The ALJ identified, as required, the specific listings she considered, which require that a claimant be unable to ambulate effectively.[3] The ALJ found that Claimant is able to ambulate effectively. Claimant testified that he does not own any assistive devices and can walk several blocks. R. 32-34. Substantial evidence

---

[3]"(1) Definition. To ambulate effectively" means" that an individual must Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.
20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B.2.b.

supports the ALJ's conclusion that Claimant is able to ambulate effectively without the use of an assistive device, even while obese. Thus, substantial evidence supports the ALJ's determination that Claimant's impairments do not meet or medically equal a listed impairment.

### C.     Substantial Evidence Supports the RFC Determination.

Prior to step four of the analysis, the ALJ is to determine a claimant's RFC.  The ALJ

then determines a claimant's past relevant work.  If a claimant can still perform past relevant

work, the claimant is not disabled.  If the claimant can no longer perform past relevant work,

the analysis continues.  20 C.F.R. § 404.1520(a)(4)(iv).  Claimant argues that the ALJ did

not adduce substantial record evidence that Claimant is able to sustain the requirements of

a "light work"[4] position or that Claimant can stand for six hours out of an eight hour work

day.  Within his challenge to the ALJ's RFC and step four analysis, Claimant raises two

distinct issues.  The Court addresses each in turn.

### 1.     The ALJ provided a sufficient narrative discussion of Claimant's RFC.

An RFC assessment is to consider functional limitations and restrictions that "result

from an individual's medically determinable impairment or combination of impairments."

SSR 96-8p.   The plain language of Social Security Regulation requires an ALJ to consider,

not articulate, the RFC on a function-by-function basis.  *Knox v. Astrue*, 572 F. Supp. 2d 926,

939 (N.D. Ill. 2008), *afff'd*, 327 Fed. App'x 652 (7th Cir. 2009) (quoting *Lewis v. Astrue*, 518

F. Supp. 2d 1031, 1043 (N.D. Ill. 2007).  As the Seventh Circuit has stated: "Although the

'RFC assessment is a function-by-function assessment,' SSR 96-8p, the expression of a

claimant's RFC need not be articulated function-by-function; a narrative discussion of

---

[4]The regulations explain that a job in the "light work" category requires a good deal of walking or standing, or requires sitting most of the time with some pushing or pulling of arm or leg controls.  20 C.F.R. § 404.1567(b).

claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 Fed. App'x 652, 657-58 (7th Cir. 2009) (holding the ALJ satisfied the discussion requirements by analyzing the objective medical evidence, the claimant's testimony, and other evidence). Contrary to Claimant's assertion, the ALJ did in fact provide a sufficient narrative discussion that addressed the objective medical evidence and Claimant's testimony. *Id.*

### 2. The ALJ properly gave greater weight to Dr. Bone's opinions and reduced weight to Claimant's treating doctors.

As part of the ALJ's RFC determination she was required to evaluate the medical evidence of record, including the opinions and treatment notes of Claimant's doctors. Claimant argues that the ALJ erred in discounting the treating physician's reports and gave too much weight to Dr. Bone, the reviewing physician for Disability Determination Services.

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) well-supported by medical findings and (2) consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The Social Security Regulations require that an ALJ must offer "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). The Seventh Circuit has held that an ALJ must only "minimally articulate" her reasons for discounting a treating source's opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). This standard is a "very deferential standard that we have, in fact, deemed 'lax.'" *Id.* (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). Once well-supported contradictory evidence is introduced, the treating physician's opinion is no longer controlling but remains a piece of evidence for

the ALJ to weigh. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). Under 20 C.F.R. § 404.1527(d)(2), the factors relevant to evaluating a treating physician's opinion are: the length, nature, and extent of the treatment relationship; frequency of examination; the physician's speciality; the types of tests performed; and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527(d)(2).

The ALJ gave greater weight to Dr. Bone, the Disability Determination Services reviewing physician, because his opinions were consistent with and supported by objective evidence of record. R. 19. The ALJ gave reduced weight to the opinions of Dr. Mytych and Dr. Bianchi because those opinions are not consistent with treatment notes or supported by objective medical evidence of record. *Id.*

Dr. Mytych completed a "Medical Evaluations - Physician's Report." The ALJ explained that Dr. Mytych saw Claimant a total of two times—once in 2005 and once in 2008—and that even in 2008 the prescribed treatment was "conservative." R. 18. Moreover, the ALJ notes that none of Dr. Mytych's treatment notes support his assessment of Claimant's limited ability to stand, walk, sit, climb, push or pull. R. 19. In compliance with 20 C.F.R. § 404.1527(d)(2), the ALJ considered the length and extent of the treatment relationship, the frequency of examination, and whether the concluding opinions were consistent with the underlying treatment notes. The ALJ then determined that the opinion of Dr. Mytych was not supported by his treatment notes or the objective medical evidence. R. 18-19. The ALJ appropriately gave Dr. Mytych's opinion reduced weight.

Regarding Dr. Bianchi's opinion, the ALJ concluded that it was not supported by any

21

records showing that Dr. Bianchi actually saw Claimant two times per year. Dr. Cespedes and Dr. Bianchi were both part of the Winters Family Practice Group and Dr. Bianchi was apparently referring to the frequency with which Claimant was seen by that group. Dr. Bianchi's opinion, therefore, appears to be based on a review of Dr. Cespedes's notes and one actual visit with Claimant that took place fourteen months after his date late insured. R. 529.

A review of the notes from Dr. Cespedes reveals nothing remarkable or supportive of Claimant's assertions of greater limitations than the ALJ found: Claimant was seen in early 2007 to get pre-op surgery approval but was not seen in person again. R. 451-52. Notes from 2005 and 2006 reflect minimal, if any, medical findings that suggest functional limitations. R. 450. While the ALJ could have given a more detailed explanation of why she discounted Dr. Bianchi's opinion, she explained that the notes do not reflect examinations twice per year since 2005 and the opinion was not consistent with the treatment notes or objective medical evidence. This is not a case where the ALJ does not offer any reason for discounting a treating doctor's opinion. *Drake v. Astrue*, No. 09 C 6954, 2010 WL 5463253, at *6-7. (N.D. Ill. Dec. 27, 2010) (remanding the case where the ALJ failed to offer any reason for discounting a treating doctor's opinion). Nothing in the treatment notes is contrary to the ALJ's ruling. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (noting that an ALJ does not need to address every piece of evidence; the requirement is simply that the ALJ not ignore evidence that is contrary to the ultimate ruling).

The ALJ was justified in affording Dr. Bone's opinion substantial weight. Dr. Bone

reviewed a comprehensive range of medical records, including Dr. Cespedes notes, the notes from Provena St. Joeseph, and physical therapy notes indicating that Claimant was released by his surgeon back to full duty work without restrictions on April 11, 2007, R. 403, which was three months before his alleged onset date and eight months before his date last insured. R.510. The ALJ explained the specific citations from Dr. Bone's report that support the conclusion that his opinions were consistent with the medical evidence of record. R. 18.

In sum, the ALJ sufficiently articulated her evaluation of the various medical opinions in giving significant weight to the DDS physician and reduced weight to other doctors. The ALJ's RFC determination was supported by substantial evidence.

## D.     The ALJ's Credibility Determination Is Not Patently Wrong.

Claimant further contends that the ALJ improperly discredited his complaints and allegations when determining Claimant's RFC. "Because the 'ALJ is in the best position to determine the credibility of the witness.' the Court reviews that determination 'deferentially' and will overturn a credibility determination 'only if it is patently wrong.'" *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). In determining whether a credibility determination is "patently wrong," the Court examines whether the ALJ's determination was reasoned and supported. *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2003). The ALJ must consider a number of factors imposed by the regulation, 20 C.F.R. § 404.1529(c) and must support a credibility finding with evidence in the record. *Smith v. Astrue*, No. 11 C 2838, 2012 U.S. App. LEXIS 5122 (7th Cir. Mar. 12, 2012). However, the ALJ may not ignore the claimant's statements regarding pain and other symptoms or disregard them merely because they are not

23

substantiated by subjective medical evidence. SSR 96-7p, 1996 WL 3784186, at * 1 (S.S.A.).

The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. This Court is aware that the Seventh Circuit has become increasingly critical of this exact boilerplate language. *Smith*, 2012 U.S. App. LEXIS 5122, at *10 (collecting cases). Simply ticking off certain medical evidence while not specifying how the evidence undermines a claimant's credibility is not enough. *Id.* The ALJ must support a credibility determination with reference to specific record evidence. *Id.*

In the present case, the Court does not find the ALJ's credibility determination was patently wrong. The ALJ detailed why she found Claimant unpersuasive, first noting that his complaints of limitations are not borne out by the medical records. R. 19. The ALJ cited Claimant's own testimony and litany of daily activities in evaluating his credibility. The ALJ explained why she did not find Claimant persuasive and supported that determination with substantial evidence. The determination was not patently wrong.

**E.     The Hypothetical Posed to the VE and Relied Upon By the ALJ Included All Appropriate Limitations.**

Claimant's final argument is that the ALJ erred at step five by failing to include all of the limitations that are supported by the medical record in the hypotheticals which she

posed to the VE. The hypotheticals posed to the VE are to include all of the limitations that the ALJ finds are are supported by evidence in the record. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992).

The ALJ's RFC was supported by substantial evidence. The hypotheticals posed to the VE included all of the limitations included in the RFC. R. 17, 43-44. The argument that the hypotheticals did not include all of Claimant's limitations is actually repetitive of the challenge to the RFC determination. This is not a case where the Court finds substantial evidence supports greater limitations than were included, *Indoranto*, 374 F.3d at 474, or the hypothetical did not include a limitation included in the RFC. *Smallwood v. Astrue*, No. 2:08 cv 85, 2009 U.S. Dist. LEXIS 70388, at *49-50 (N.D. Ind. Aug. 11, 2009). Having previously concluded that the RFC was supported by substantial evidence and that the ALJ included all of the limitations in the RFC in the hypothetical posed, the Court does not find the ALJ erred at step five. As the VE testified that Claimant can perform work that exists in significant number in the economy, the ALJ's finding that Claimant was not disabled before his alleged onset date of December 31, 2007, is supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court denies Claimant's motion to reverse the final decision of the Commissioner and grants the Commissioner's motion to affirm the Commissioner's decision.

SO ORDERED THIS 30th DAY OF MAY, 2012.


_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**


**Copies sent to:**

Ashley S. Rose
Law Office of Ashley S. Rose
799 Roosevelt Road
Building 6, Suite
Chicago, IL 60137

**Counsel for Plaintiff**

Harpreet Chahal
Assistant United States Attorney
219 S. Dearborn Street
Chicago, IL 60604

Cynthia A. Freburg
Assistant Regional Counsel
200 West Adams Street
Suite 3000
Chicago, IL 60606

**Counsel for Defendant**